**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case no. 3:03-cr-00739 |
| Plaintiff, | Hon. David A. Katz |
| v. | **DEFENDANT'S AMENDED SENTENCING MEMORANDUM FOLLOWING REMAND** |
| PATRICK J. PUTTICK, | |
| Defendant. | |

Mr. Puttick was convicted in this court on one count of conspiring to violate RICO in violation of 18 U.S.C. §1962(d).  Mr. Puttick was *acquitted* on charges of substantive RICO violations, narcotics conspiracy, and use of a telecommunications facility in furtherance of drug trafficking.

Puttick was sentenced by this court on December 22, 2004, prior to the holding in *United States v. Booker*, 543 U.S. 220 (2005).  The *Booker* court concluded that criminal sentences determined on the basis of judicially-determined facts violated the Sixth Amendment right to jury trial.  In order to remedy this violation, the *Booker* court severed those parts of 18 U.S.C. § 3553 which mandated that criminal sentences be based on the sentencing guidelines, so that, following *Booker*, criminal sentences would be based on all of the § 3553 factors, with the guidelines being one of several factors.

This court determined that Puttick's base offense level for purposes of the sentencing guidelines was 19.  The court determined that Puttick's participation in the RICO conspiracy consisted of the distribution of 144 kilograms of cocaine, and so added

14 points.  The court also found Mr. Puttick to be a leader or organizer of the conspiracy, and so added an additional three points, for a total adjusted base offense level of 36.  In conjunction with Puttick's criminal history category of II, this yielded a sentencing guidelines range of  292-365 months imprisonment.

The court imposed a twenty-year prison sentence, which is the maximum sentence for violation of 18 U.S.C. §1962(d).

On direct appeal, the Sixth Circuit Court of Appeals, applying *Booker*, vacated Mr. Puttick's sentence, and remanded for resentencing.

This Memorandum sets forth Mr. Puttick's position with respect to re-sentencing, specifically the calculation of the appropriate discretionary sentencing range pursuant to the United States Sentencing Guidelines.

## I. THE BASE OFFENSE LEVEL IS 19

While Mr. Puttick maintains his complete innocence in this matter, he recognizes that the jury has spoken and that its verdict must be respected (*ahem*).   Therefore, his base offense level is 19 as previously determined by this court.

## II. THE EVIDENCE PRESENTED AT TRIAL DOES NOT SUPPORT A FINDING THAT MR. PUTTICK IS A LEADER OR A MANAGER OF THE RICO CONSPIRACY

Mr. Puttick was president of the so-called Green region of the OMC,  It is clear that the OMC was, on one level, a legitimate fraternal organization whose members held a common interest in motorcycles.  The government conceded as much in its arguments to the jury, pointing out that motorcycle clubs, or being a member of a motorcycle club, are not illegal *per se*.  (Tr. 7626) The conspiracy and criminal activity which the government sought to prove was not co-extensive with the OMC organization.

As such, Mr. Puttick's formal title of Green region president does not suffice, in and of itself, to establish that Puttick had a role as a leader or manager of criminal activity, as envisioned by § 3B1.1(b) of the sentencing guidelines.  An enhancement pursuant to that section requires proof that Mr. Puttick actually managed or supervised criminal activity; his formal title does not obviate the requirement of that proof.

As the court is obviously aware, this trial involved a large number of witnesses and several weeks of testimony.  In this massive body of evidence, however, Mr. Puttick received scant attention.  Essentially, the government attempted to present only three episodes involving Puttick:  a meeting of OMC members in Cancun, Mexico which Puttick may or may not have attended according to one witness, but in which he opposed drug dealing according to another witness; a meeting of OMC members in Pennsylvania; and Puttick's alleged involvement in supplying cocaine to Gary Hohn.  The government's proof as to the Cancun meeting and the supply of cocaine failed, and although the government demonstrated that Puttick attended the Pennsylvania meeting, the discussions at that meeting did not necessarily violate the law.

Two witnesses, Ronald Talmadge and Ed Anastas, testified concerning the Cancun meeting.  Anastas initially testified that Puttick was at the meeting, (Ed Anastas, Tr. 3516), but then stated only that he was "pretty sure" that Puttick was present.  (*Id*., 3519)  Although Talmadge testified that Puttick was present at the Cancun meeting. (Ronald Talmadge, Tr. 2432) However, when discussion of heroin and ecstasy sales by members in Canada came up, Talmadge interposed an objection to the discussion of any illegal conduct, and following his objection the matter was dropped. (Ronald Talmadge, Tr. 2433-2434)

Clearly, the Cancun meeting proved *no* criminal activity on the part of Puttick, let alone that he was a "manager or supervisor" of such activity. He either was not present, (Anastas) and even if he was, the subject of drug dealing was expressly off-limits.

With regard to the Pennsylvania meeting, Puttick allegedly made statements on a tape recording in which he expressed concern that certain OMC members were cooperating with a government investigation of the OMC. Such expression of concern, without more, is not a criminal offense. At worst, it infers that Puttick would espouse obstruction of justice by interfering with the informants' continued participation in OMC activities. But again, this falls far short of acting as a "manager or supervisor" of criminal activity.

Last with respect to Mr. Puttick, the government presented the testimony of Tracy Tipton, that Puttick supplied kilo quantities of cocaine to co-defendant Gary Hohn. Obviously the jury rejected this testimony, since Puttick was acquitted of the drug conspiracy. Since the jury rejected this allegation, it necessarily determined Tipton to be without credibility. But even assuming, *arguendo,* that the government proved by a preponderance of the evidence that Puttick supplied cocaine to Hohn, such activity is not the management or supervision of criminal activity.

Thus, none of the government's three fronts against Mr. Puttick supports a § 3B1.1(b) enhancement.

### III. THE JURY NECESSARILY DETERMINED THAT TRACY TIPTON'S TESTIMONY WAS NOT CREDIBLE, AND THEREFORE THIS COURT SHOULD NOT FIND BY A PREPONDERANCE OF THE EVIDENCE THAT PUTTICK SUPPLIED COCAINE TO GARY HOHN

At Puttick's first sentencing, the court found that the underlying racketeering activity was cocaine trafficking, and that Puttick was responsible for 144 kilos of cocaine. This was evidently based on the testimony of Tracy Tipton, who claimed that she lived with co-defendant Gary Hohn from 1993 or 1994 until 1998, and that during this period of time Hohn distributed between three and six kilograms per month. Appellant surmises that the probation department used 1994 as the starting point, 1998 as the end point, and three kilograms per month as the amount distributed by Hohn. This would result in 144 kilograms. (Four years – 48 months – times three kilograms yields 144 kilograms.)

Had the jury credited Tipton's testimony to *any* extent, it obviously would have convicted Puttick of the drug conspiracy. Tipton did not have direct knowledge of the identity of Hohn's supplier, but she claimed to have observed activity which gave rise to the *nearly inescapable inference* that Puttick was the supplier: Whenever Hohn's cocaine inventory ran low, Puttick would appear and immediately following his visit the supply was replenished. That the jury rejected her credibility wholesale is inescapable, for Tipton's testimony, *if believed*, clearly establishes Puttick as the supplier. But the jury *acquitted* Puttick of the drug conspiracy.

Under current legal authority this court may determine, by a preponderance of the evidence, that Puttick engaged in relevant conduct even though he was acquitted of that conduct by the jury. *United States v.* White, ___ F.3d ___ (6th Cir. 2008)  This rule is repugnant to the Sixth Amendment, but in any event, the evidence before this court does

not even meet that lower burden. Since Tipton's credibility has obviously been rejected by the fact-finder *in toto*, this court cannot (or at least certainly should not) rely on her testimony to make a factual finding – whether by a preponderance or otherwise.

Mr. Puttick's base offense level should be 19, and should not be increased on the basis of Tracy Tipton's testimony.

### IV. PUTTICK'S SENTENCING GUIDELINES RANGE SHOULD BE 33-41 MONTHS

Applying the 2003 edition of the sentencing guidelines, using a criminal history category of II, and an offense level of 19, the resulting guideline range is 33-41 months.

Respectfully submitted,

_____
Thomas P. Kurt
Attorney for Defendant
610 Adams Street
Toledo, Ohio  43604
Ph. (419) 241-5506

**CERTIFICATE OF SERVICE**

I hereby certify that on, the foregoing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Thomas P. Kurt
Attorney at Law